UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LESTER I. CRANDALL,

                       Petitioner,

        v.                            9:07-CV-0891
                                            (GTS/GHL)

J. JUBERT, Acting Supervisor,

                       Respondent.

_____

APPEARANCES:                          OF COUNSEL:

LESTER I. CRANDALL
Petitioner, *pro se*
06-B-0858
Bare Hill Correctional Facility
Caller Box 20
Malone, NY 12953

HON. ANDREW M. CUOMO             LEILANI J. RODRIGUEZ, ESQ.
Office of the Attorney General           Assistant Attorney General
State of New York
Counsel for Respondent
120 Broadway
New York, New York 10271

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION & ORDER[1]

      Petitioner Lester I. Crandall, *pro se*, is an inmate in the custody of the New York State

Department of Correctional Services.  After a jury trial in March of 2006 in New York State

Supreme Court, Montgomery County, Petitioner was found guilty of Criminal Sale of a Controlled

Substance in the Third Degree, and Criminal Possession of a Controlled Substance in the Third

Degree.  Dkt. No. 1.  Petitioner was sentenced to serve a prison term of eight years on each count, to

---

     [1]  This action has been referred to the undersigned by District Judge Glenn T. Suddaby for a
report and recommendation pursuant to 28 U.S.C. § 636(b) and Northern District of New York
Local Rule 72.3(c).

run concurrently.  *Id.*

Petitioner's conviction was affirmed by the Appellate Division, Third Department, and leave to appeal to the Court of Appeals was denied.  *People v. Crandall*, 38 A.D.3d 996 (App. Div. 2007), *leave denied*, 9 N.Y.3d 842 (2007).

In his petition, Petitioner raises the following grounds for habeas relief: (1) the prosecution and police intentionally withheld evidence; (2) defense counsel was ineffective; and (3) the police and the confidential informant committed perjury.  Dkt. No. 1.  For the reasons which follow, it is recommended that the petition be denied.

## I.  BACKGROUND

On August 5, 2004, Petitioner sold cocaine to a confidential informant, working for the Amsterdam Police Department, outside of a convenience store in Amsterdam, New York.  Trial Transcript ("TT") 279-83, 549-50.[2]  The transaction was observed by police officers.  TT 388, 395, 397.  Petitioner was charged with Criminal Sale of a Controlled Substance in the Third Degree, and Criminal Possession of a Controlled Substance in the Third Degree.  TT 252.  He was found guilty at trial.  TT 549-50.

## II.  DISCUSSION

**A.     Applicable Standard of Review**

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States.  28 U.S.C. § 2241(c).  Relief does not lie for errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *DiGuglielmo v. Smith*,

---

[2]  Any references to page numbers in the trial transcript are to the page numbers printed in the top right-hand corner of the transcript.

2

366 F.3d 130, 136-137 (2d Cir. 2004).   Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim that was adjudicated on the merits in state court proceedings unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1); *Carey v. Musladin*, 127 S. Ct. 649, 653 (2006); *Campbell v. Burgess*, 367 F. Supp. 2d 376, 380 (W.D.N.Y. 2004).

A decision is adjudicated "on the merits" when it finally resolves the claim, with res judicata effect, based on substantive rather than procedural grounds.  *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001).  This is so, "even if the state court does not explicitly refer to either the federal claim or to relevant federal case law."  *Id.* at 312.  To determine whether a state court has adjudicated a claim "on the merits," a federal habeas court must examine three "clues" to classify the state court decision as either (1) fairly appearing to rest primarily on federal law or to be interwoven with federal law; or (2) fairly appearing to rest primarily on state procedural law.[3]  *Jimenez v. Walker*, 458 F.3d 130, 145 (2d Cir. 2006).  "Absent a clear and express statement of reliance on a state procedural bar," decisions in the first category are deemed to have been made "on the merits" of the federal claim.  *Id.*

A decision on the merits is contrary to clearly established federal law when it is either contrary to Supreme Court precedent on a question of law or opposite to a relevant Supreme Court case with materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).  A state court unreasonably applies federal law when the state court correctly identifies the governing

---

[3]  The three "clues" to the basis of a state court's decision are (1) the face of the state court opinion; (2) whether the state court was aware of a procedural bar; and (3) the practice of state courts in similar circumstances.  *Jimenez*, 458 F.3d  at 145, n. 16.

legal rule in a particular case but applies the rule to the facts in an "objectively unreasonable" manner. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  Although "[s]ome increment of incorrectness beyond error is required" in order to grant a federal habeas application, that increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quotation marks and citation omitted); *see also Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006), *cert. denied*, 549 U.S. 1215 (2007).  The state court's determination of a factual issue is presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005), *cert. denied*, 546 U.S. 884 (2005); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

**B.     Alleged *Brady* Violation**

Petitioner argues that the prosecution failed to comply with their discovery obligation under *Brady v. Maryland*, 373 U.S. 83 (1963). Dkt. No. 1 at 8-29.[4]  Specifically, Petitioner argues that the police traveled to the residence of his "estranged" daughter where they "demanded" the keys to Petitioner's truck, which was parked on adjoining property. *Id.* at 10.  Petitioner claims that the police then "invited" his daughter to remove items from the truck, which she apparently did. *Id.* The alleged items included an "activated cellphone, cameras, work log, legal papers, pictures and audio tapes." *Id.* Petitioner argues that the removed items were "favorable and exculpatory." *Id.* at 9.

Respondent argues that (1) Petitioner has not shown that any of these items constituted

---

[4]  Any references to pages numbers in the petition are to the page numbers typed at the bottom of the petition.

exculpatory information, and (2) the rejection of this claim by the state court was not a

contravention, or an unreasonable application of, Supreme Court law.[5]  Dkt. No. 6 at 10-13.

On direct appeal, the Appellate Division rejected Petitioner's claim as follows:

> [W]e reject defendant's claim of spoliation of evidence as a result of claimed *Brady*
> violations.  In essence, defendant's claim is that when the police impounded his
> truck, they confiscated certain records and his cell phone from the cab of the truck
> and gave them to his daughter, from whom he is estranged, and that these items have
> disappeared.  In particular, defendant claims that it would be possible to retrieve
> from his cell phone information which would prove that the confidential informant
> did not-as he testified he did-call him on the day of the controlled buy.  While due
> process does require that the People provide a defendant with all requested
> exculpatory evidence relating to guilt or punishment [citation omitted], defendant has
> confused evidence which might be useful in affecting the credibility of a prosecution
> witness with evidence that is truly exculpatory-that is, that would establish his
> innocence.

*Crandall*, 38 A.D.3d at 997.

This determination was not contrary to, or did not involve an unreasonable application of,

clearly established Supreme Court law.

A prosecutor's failure to turn over evidence that is favorable to the defense may constitute a

due process violation.  *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Brady v. Maryland*,

373 U.S. 83, 86-87 (1963).  To establish a *Brady* violation, a petitioner must show that: (a) the

evidence in question was favorable to him, either because it was exculpatory or impeaching; (b) the

prosecutor suppressed the evidence, either willfully or inadvertently; and (c) prejudice ensued.

---

[5]  Respondent also argues that Petitioner is claiming that the prosecution did not comply
with their discovery obligations under *People v. Rosario*, 9 N.Y.2d 286 (1961).  Dkt. No. 6 at 10-12.
Petitioner states in his traverse that he "has not, and does not now, assert a *Rosario* claim."  Dkt.
No. 11 at 3.  If Petitioner had attempted to assert such a claim, I would have recommended
dismissal of any such claim because an alleged *Rosario* violation does not form a basis for federal
habeas relief.  *See Moss v. Phillips*, No. 9:03-CV-1496, 2008 WL 2080553, at *7 (N.D.N.Y. May
15, 2008) (Kahn, J.) (noting that a *Rosario* violation cannot form a basis for federal habeas relief
because such violations are grounded in state law) (citations omitted).

*Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Prejudice results when there is a reasonable probability that the outcome of the trial would have been different had the evidence been disclosed. *Id.* at 281.

Regarding the first requirement that the evidence in question was favorable, Petitioner explains the exculpatory nature of only one specific item.  He claims that the cellular telephone ("cell phone") " 'would have shown [that] there were no telephonic conversations between [Petitioner] and the confidential informant.' "  Dkt. No. 1 at 14 (quoting affidavit filed with motion in state court).  However, the informant himself testified at trial that *he did not know Petitioner's cell phone number.*  TT 354.  The informant explained that Petitioner was at the informant's house prior to the drug purchase, that the informant called his own house when Petitioner was there, and that he exchanged information regarding the meeting location with Petitioner through another individual who was at the house.  TT 353-54.  Therefore, Petitioner's claim that the cell phone would have been exculpatory is unpersuasive.

Regarding the remaining items, Petitioner vaguely speculates that the remaining items (only some of which he identifies) were exculpatory.  It is well settled that "the mere speculation that exculpatory evidence was withheld is insufficient to warrant habeas relief."  *Mallet v. Miller*, 432 F. Supp. 2d 366, 377 (S.D.N.Y. 2006) (citing *Strickler*, 527 U.S. at 286 )("Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review."); *United States v. Avellino*, 136 F.3d 249, 261 (2d Cir. 1998) ("In the absence of a proffer by [defendant] of any nonspeculative basis for inferring that . . . the government had not made available to him all pertinent material in its possession, it was well within the discretion of the court to conclude that no evidentiary hearing was necessary.") (other citation

omitted)).  Accordingly, Petitioner is unable to establish the first *Brady* requirement that the alleged

items removed from his truck were favorable.

Regarding the second requirement that the prosecutor suppressed the evidence, either

willfully or inadvertently, Petitioner has failed to establish that the People suppressed this evidence.

Instead, Petitioner himself states that his estranged daughter possessed all of the items from the

truck except for a sleeping bag, and that the items have never been recovered.[6]  Dkt. No. 1 at 10, 11.

Moreover, the People maintained at trial that defense counsel or his representative had an

opportunity to view whatever items may have remained in the truck, and that "if there was a . . .

phone, it would be in the possession of [Petitioner's] daughter."  TT 17.  The People were not

required to disclose evidence that it did not possess or of which it was not aware.  *Sturdivant v.*

*Barkley*, No. 04-CV-5659, 2007 WL 2126093, at *6 (E.D.N.Y. July 24, 2007) (citation omitted).

Thus, Petitioner has failed to establish the second *Brady* requirement that the People suppressed the

alleged items taken from the truck.[7]

Regarding the third requirement that prejudice ensued, the evidence at trial was

overwhelming.  The confidential informant testified that he arranged to meet Petitioner at a

convenience store in order to buy cocaine.  TT 275-83.  After Petitioner arrived in the parking lot,

---

[6]  In contrast, at trial, defense counsel stated that his investigator recovered "a number" of items from the daughter.  TT 16.

[7]  Nevertheless, Petitioner argues in his traverse that his daughter became "an agent of the police" once "the police demanded and received the keys" to the truck from daughter.  Dkt. No. 11 at 2.  For support, Petitioner cites *People v. Greig*, 209 A.D.2d 998, 998 (App. Div. 2004), where it was held that motel owners, who called the police, " 'let the deputy' " into the defendant's motel room, and later gave the deputy a key to the room, "acted as agents of the sheriff's department."  In contrast, here, according to Petitioner, the police "*demanded* that [his daughter] *relinquish* the keys." Dkt. No. 1 at 10 (emphasis added).  Accordingly, Petitioner's argument is unavailing.

the informant walked up to Petitioner's vehicle, handed Petitioner money, and, in return, received cocaine from Petitioner.  TT 279-83.  The transaction was witnessed by Investigator Alberto David, Jr. of the New York State Police, who was sitting in his vehicle approximately *two feet away* from Petitioner's vehicle.  TT 395, 397.  Detective Michael Cole of the Amsterdam Police Department observed the incident from afar.  TT 388.  The informant later gave the cocaine to Detective John DiCaprio of the Amsterdam Police Department.  TT 374.  Thus, Petitioner has failed to establish the third *Brady* requirement that prejudice ensued.

Accordingly, the petition on this ground should be denied.

## C.    Effectiveness of Trial Counsel

In his petition, Petitioner claims that defense counsel, William F. Martuscello, Esq., a public defender, was ineffective for approximately sixteen different reasons, which will be examined herein.  Dkt. No. 1 at 30-36.  Respondent argues that the state court's rejection of Petitioner's claims of ineffectiveness of trial counsel was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  Dkt. No. 6 at 14-19.

On direct appeal, Petitioner arguably raised the same alleged reasons why counsel was ineffective, as well as many others, in his *pro se* supplemental brief.  Ex. B.

The Appellate Division rejected Petitioner's claims of ineffective assistance of counsel. *Crandall*, 38 A.D.3d at 997-98.  The Court held, "We have examined defendant's remaining contentions of . . . ineffective assistance of counsel and find [them] . . . unpersuasive."  *Id.*  This determination was not contrary to, or involved an unreasonable application of, clearly established Supreme Court law.

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal

prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."

U.S. Const. amend. VI.  To establish a violation of this right to the effective assistance of counsel, a

habeas petitioner must show both: (1) that counsel's representation fell below an objective standard

of reasonableness, measured in the light of prevailing professional norms; and (2) resulting

prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the

outcome of the proceeding would have been different.  *Strickland v. Washington*, 446 U.S. 668,

688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims

of ineffective assistance of counsel" were established in *Strickland*.).  There is a strong presumption

that counsel's conduct fell within the wide range of reasonable assistance and that counsel's actions

constituted sound trial strategy under the circumstances.  *Cuevas v. Henderson*, 801 F.2d 586,

589-90 (2d Cir. 1986).

### 1.    Counsel's Conduct in General

Initially, the Court notes that counsel's conduct was objectively reasonable.  At trial, counsel

was an active participant during voir dire.  TT 108-16.  He asked the potential jurors numerous

questions.  *Id.*

During his opening statement, counsel argued that there was reasonable doubt in the case.

TT 264-66.  He argued that the informant would "say anything [and] do anything to anybody."  TT

264.  Counsel pointed out that the informant committed crimes against his own mother and that he

burglarized a home, taking toys from underneath a Christmas tree.  TT 264.  He also asked the jury

to refrain from assuming facts or leaping to conclusions.  TT 259.

During the People's case, counsel vigorously cross-examined several witnesses.  In

particular, counsel cross-examined the informant at length.  TT 287-359.  Counsel asked him

9

several pointed questions regarding the informant's former drug habit and his prior criminal convictions.  TT 287-359.  Counsel also elicited testimony from the informant in which he admitted that he possessed stolen Christmas toys.  TT 291-92.  He also made several objections that were sustained.  *See* TT 274, 365, 397.

At the close of the People's case, counsel successfully argued that the informant's former girlfriend should be allowed to testify regarding the informant's reputation in the community for truth and veracity.  TT 430-41.  She testified that the informant's reputation for truth and veracity was that he was a "liar."  TT 451.  She also testified that the informant used to "beat[] [her] up."  TT 454.  Counsel then moved to dismiss the case for lack of proof.  TT 457.

Counsel also presented a comprehensive summation.  TT 472-87.  He argued that the informant had a motive and opportunity to set up Petitioner.  TT 483.  He also reminded the jury of the informant's prior convictions and argued that the informant was a career criminal.  TT 476-79.

### 2.    Alleged Failure to File an Article 78 Proceeding

Petitioner argues that counsel was ineffective for failing to file an Article 78 proceeding seeking the return of his truck and the items therein.  Dkt. No. 1 at 30.  However, Petitioner refutes his own claim.  In his petition, he states that counsel informed him that he could not file an Article 78 proceeding on his behalf "because an 'Article 78 is civil in nature and not criminal' and is not part of the Public Defenders representation."  Dkt. No. 1 at 30.  Therefore, counsel was not ineffective, rather, he was unable to commence a civil proceeding.  Moreover, Petitioner states that he in fact commenced the Article 78 proceeding *pro se*.  Dkt. No. 1 at 15, 18.  Accordingly, Petitioner has failed to meet either prong of the *Strickland* standard, and the petition on this ground should be denied.

### 3.      Alleged Failure to File a Proper Motion or Seek Sanctions

Petitioner argues that counsel was ineffective because he "failed or neglected" to file a "proper motion seeking dismissal or severe sanctions" regarding the seizure of his truck and "spoliation" of the items therein.  Dkt. No. 1 at 31; Dkt. No. 4 at 4.  Respondent argues that counsel did in fact address the court regarding this issue.  Dkt. No. 6 at 15.

The transcript reveals that counsel brought this issue to the Court's attention prior to the commencement of trial, noting that Petitioner "would like to request sanctions due to the spoliation of [the items seized from his truck]."  TT 15.  A lengthy discussion was held regarding this topic. TT 15-19.  The trial court denied the request.  TT 19.

In light of the foregoing, Petitioner's argument is unavailing.  Petitioner has failed to meet either prong of the *Strickland* standard, and the petition on this ground should be denied.

### 4.      Alleged Failure to Pursue Petitioner's Requested Theme

Petitioner argues that counsel was ineffective because counsel "knew that Petitioner wanted spoliation to be the 'theme' of his defense," yet counsel failed to "effectively" pursue this theme through cross-examinations.  Dkt. No. 1 at 31; Dkt. No. 4 at 6.  Respondent argues that counsel's decision to focus on the credibility of the informant, and not on the alleged spoliation, was reasonable.  Dkt. No. 6 at 16.

A defendant does not have "an absolute right to dictate the defense strategy." *Latterell v. Conway*, 430 F. Supp. 2d 116, 123-24 (W.D.N.Y. 2006).  Indeed, tactical decisions, "such as trial strategies or the questioning of witnesses are left to the discretion of appointed counsel." *Id.* (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).

Therefore, Petitioner did not have an absolute right to dictate the "theme" of his defense.

11

Counsel's conduct in choosing to attack the credibility of the informant rather than pursuing the spoliation theme was objectively reasonable.  Accordingly, Petitioner has failed to meet either prong of the *Strickland* standard, and the petition on this ground should be denied.

    **5.**        **Alleged Failure to Move for a Mistrial**

Petitioner argues that counsel was ineffective for failing to move for a mistrial when the informant stated that he knew Petitioner from "prior sales."  Dkt. No. 1 at 34-35.  Petitioner claims that immediately prior to this testimony, the prosecutor was instructed during a side-bar conference that the informant should "not . . . mention alleged prior sales."  *Id.*  Petitioner claims that nevertheless, the "overzealous" prosecutor "guided" the informant to mention prior sales.  *Id.*

Petitioner is referring to the following exchange:

| | |
|---|---|
| Prosecutor: | [Mr. Informant,] as of August of 2005, can you tell the jury how you knew the Defendant? |
| The Court: | '05 or '04? |
| Prosecutor: | '05, Your Honor.  Excuse me.  '04, Your honor.  Excuse me.  You're right.  Thank you.  I wrote down the wrong date. |
| Defense counsel: | Judge, can we - - I'm sorry.  Can we approach for a second? |
| The Court: | Sure. |

(Off-record discussion by and between Court and Counsel.)

| | |
|---|---|
| The Court: | After a brief Bench conference, [Mr. Prosecutor], please continue. |
| Prosecutor: | Thank you, Your Honor. |
| Prosecutor: | Will you tell the jury how it was you knew the Defendant back in August of 2004? |
| Informant: | Just from buying drugs and knowing through other people. |

| | |
|---|---|
| Defense Counsel: | Objection, Your Honor. |
| The Court: | All right.  Sustained.  All right.  Well, ladies and gentlemen, I'm asking you to disregard the last comment and strike it from your minds, as if it were never said. |

TT 273-74.

First, while the record indicates that an off-record discussion was held between the trial

court and the attorneys, the record does not indicate the topic of discussion.  Thus, Petitioner's claim

that the prosecutor was instructed during a side-bar conference that the informant should "not . . .

mention alleged prior sales," is unsupported by the record.

Second, the record contains no indication that the prosecutor "guided" the informant to

mention "prior sales," as Petitioner suggests.  Instead, the record shows simply that the prosecutor

asked the informant how he knew Petitioner in August of 2004.  Moreover, the informant did not

specify that he bought drugs *from Petitioner*.  Rather, he vaguely stated that he knew Petitioner

"[j]ust from buying drugs and knowing through other people."  TT 274.

Third, as the record indicates, counsel promptly objected to the informant's response.  The

trial court sustained the objection and asked the jury to disregard and strike the comment.

Accordingly, Petitioner has failed to meet either prong of the *Strickland* standard, and the

petition on this ground should be denied.

### 6.     Alleged Failure to Call Certain Witnesses

#### a.     Petitioner's Daughter

Petitioner argues that counsel was ineffective for failing to enforce the subpoena on

Petitioner's estranged daughter.  Dkt. No. 1 at 31-32; Dkt. No. 4 at 5.  Respondent argues that the

decision not to call this person may have been strategic because Petitioner himself stated that he was

estranged from his daughter; therefore calling her as a witness would not have been in Petitioner's best interest.  Dkt. No. 6 at 18-19.

"The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial."  *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987), *cert. denied*, 484 U.S. 957 (1987).  The decision to refrain from calling a specific witness, even one that may offer exculpatory evidence, is ordinarily not viewed as a lapse in professional representation.  *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005), *cert. denied*, 546 U.S. 1184 (2006) (citations omitted).

Petitioner himself stated numerous times that he was estranged from his daughter.  Dkt. No. 1 at 10, 31.  He also stated that she "refused to appear" for trial, Dkt. No. 1 at 25, and that she "balked at and ignored the subpoena."  Ex. B at 13.  Therefore, counsel made a tactical decision to refrain from calling her as a witness because it would not have been in Petitioner's best interest. Petitioner has failed to meet either prong of the *Strickland* standard.  Accordingly, the petition on this ground should be denied.

### b.    Lieutenant Thomas P. DiMezza

Petitioner argues that counsel was ineffective for failing to call Lieutenant Thomas P. DiMezza "as a witness or seek a missing witness charge."  Dkt. No. 1 at 32.  Petitioner claims that Lt. DiMezza "orchestrated and participated in the warrantless seizure" of his truck.  *Id.*  Respondent argues that the decision not to call this person was a tactical decision.  Dkt. No. 6 at 18-19.

Counsel made a tactical decision to refrain from calling Lieutenant DiMezza.  Perhaps counsel wanted the jury to focus on *the events that happened on the day in question*, and not on the subsequent seizure of Petitioner's truck.  Moreover, Petitioner failed to suggest how testimony from

14

this individual would have helped his defense.

Therefore, Petitioner has failed to meet either prong of the *Strickland* standard. Accordingly, the petition on this ground should be denied.

### c.      Rose Epting

Petitioner argues that counsel was ineffective for failing to call his aunt, Rose Epting, as an alibi witness.  Dkt. No. 1 at 33; Dkt. No. 4 at 5.  Petitioner claims that she "could have testified that she received a call from the [informant's] residence asking that Petitioner proceed to that residence for a moving job" and that Detective Cole seized the certificate of title to Petitioner's vehicle from her without a warrant.  Dkt. No. 1 at 33.

It is unclear how testimony from this witness would have advanced the defense.  Moreover, Petitioner simply speculates as to what testimony his aunt "could" have provided.  Unsubstantiated conclusions, opinions, or speculation cannot serve as a basis for habeas relief.  *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (asserting that federal courts should not grant "habeas relief on the basis of little more than speculation with slight support").  Counsel likely made a tactical decision to refrain from calling Petitioner's aunt because it appears that her testimony would have been immaterial.  Therefore, Petitioner has failed to meet either prong of the *Strickland* standard. Accordingly, the petition on this ground should be denied.

### 7.      Alleged Failure to Subpoena the Informant's Driving Record

Petitioner argues that counsel was ineffective by failing to subpoena the informant's driving records, "which would have shown [that] he had no vehicle registered to him, and that his license was suspended on August 5, 2004."  Dkt. No. 1 at 33.  Petitioner claims that "[b]y failing to disclose this information, [the informant] was able to falsely testify that he drove to the situs of the alleged

sale." *Id.*  Respondent argues that this claim is without merit.  Dkt. No. 16-17.

First, Petitioner's claim is unpersuasive.  Even if the informant had no vehicle registered to him and his license was suspended on the date in question, this would not disprove his testimony that he drove a vehicle to buy drugs from Petitioner on the date in question.

Second, the informant in fact testified on cross-examination that he was unsure if his driver's license was valid in August of 2004.  TT 348.  He also stated that he was unsure what vehicle he drove and that he may have driven a vehicle that was registered to another person.  TT 352-53.

In light of the foregoing, Petitioner has failed to meet either prong of the *Strickland* standard.  Accordingly, the petition on this ground should be denied.

### 8.        Alleged Failure to Adequately Cross-Examine Investigator David

Petitioner argues that counsel was ineffective for failing to cross-examine Investigator David regarding "his failure to tell the Grand Jury or include in his 'Surveillance Report,' " that the informant showed Investigator David the drugs while the informant walked away from Petitioner's vehicle.  Dkt. No. 1 at 34.  Petitioner also argues that counsel failed to question this witness "about his omission of a description" of the informant's vehicle from the surveillance sheet, and his failure to check a box on the surveillance sheet to indicate whether photographs were taken.  *Id.*  Respondent argues that counsel may have purposely chosen not to pursue these lines of questioning for strategic reasons.  Dkt. No. 6 at 17.

Regarding the first claim that counsel failed to cross-examine Investigator David regarding "his failure to tell the Grand Jury or include in his 'Surveillance Report,' " that the informant showed him the drugs as the informant walked away from Petitioner's vehicle, this claim is unavailing.  The transcript reveals that *counsel asked Investigator David if it was true that the*

*surveillance sheet failed to indicate that he "saw the plastic bag."*  TT 414.  Investigator David confirmed that this was true.  TT 414.  Moreover, counsel reminded the jury of this point numerous times during his summation, and speculated as to the "pressure" Investigator David was under to "maybe embellish a little or add a few facts" during his testimony.  TT 490, 494.  Indeed, counsel pointed out to the jury, "There is nothing in [the surveillance sheet] about seeing any package in [Petitioner's] hands or seeing [Petitioner] hand the package to [the informant].  And there's nothing in here about seeing [the informant] walk in front of the car with a package."  TT 490.

Regarding the second claim that counsel failed to question this witness "about his omission of a description" of the informant's vehicle from the surveillance sheet, this claim is also unavailing.  The transcript reveals that on cross examination, counsel showed this witness a somewhat different version of the surveillance sheet that contained the following notation: " 'No arrival by [confidential informant], no description of vehicle.' "  TT 415.  Investigator David denied making the notation.  TT 415.  Thus, counsel did touch upon this topic during cross-examination of this witness.

Regarding the third claim that counsel was ineffective for failing to ask Investigator David why he failed to indicate, by checking a box, whether photographs were taken, this claim is also unavailing.  Counsel asked Investigator David several questions about the surveillance sheet, stressing stronger points, such as the omission of any indication that Investigator David saw the informant with a plastic bag.  TT 400-01, 412-16. Counsel's decision to refrain from asking Investigator David why he failed to check a specific box on the form was strategic and does not support Petitioner's claim of ineffectiveness.  Indeed, decisions about "whether to engage in cross-examination, and if so to what extent and in what manner, are strategic in nature and generally will not support an ineffective assistance claim."  *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir.

2002) (citing *Nersesian*, 824 F.2d at 1321 (quotation marks omitted)).  In any event, counsel

brought the lack of photographs to the jury's attention during his summation.  He pointed out that

there were no photographs to support the charges.  TT 486.

Accordingly, Petitioner has failed to meet either prong of the *Strickland* standard, and the

petition on this ground should be denied.[8]

### 9.   Alleged Failure to Impeach the People's Witnesses Using Grand Jury Testimony

Petitioner vaguely claims that counsel was ineffective for "never us[ing] the Grand Jury

testimonies of any of the prosecution witnesses to impeach them."  Dkt. No. 1 at 36.  To the extent

that Petitioner is claiming that the witnesses should have been impeached because they allegedly

failed to tell the grand jury that originally the informant planned to meet Petitioner at a different

convenience store, Ex. B at 24, the alleged omissions were immaterial.  Accordingly, Petitioner has

failed to meet either prong of the *Strickland* standard.  Thus, the petition on this ground should be

denied.

### 10.   Alleged Failure to Adequately Cross-Examine the Informant

Petitioner argues that counsel was ineffective for (1) failing to ask the informant certain

questions regarding his arrest for a crime involving a check belonging to the informant's father

(Dkt. No. 1 at 35); (2) failing to elicit certain testimony from the informant regarding an alleged

unpaid debt (*id.* at 32-33); (3) failing to ask the informant why no conversations were recorded (*id.*

---

[8]  Plaintiff also claims that counsel failed to ask "the Police why no conversations were
recorded."  Dkt. No. 1 at 34.  Petitioner fails to show that the Police had an ability to record
conversations.  In any event, counsel raised this issue before the jury.  He argued, "[T]here was not
one, one bit of reliable evidence that put any - - contraband in the hands of Lester Crandall in this
trial.  *None of the Police, no cameras, no photos, no conversation, no dialog, nothing.*"  TT 486
(emphasis added).

at 34); and (4) failing to impeach the informant regarding the length of time the informant and Petitioner had known each other (*id.* at 36).

Petitioner has failed to meet either prong of the *Strickland* standard.  First, he has failed to show that counsel's performance fell below constitutional standards.  As noted, counsel vigorously cross-examined the informant at length.  TT 287-359.  Counsel asked him several pointed questions regarding the informant's former drug habit and his prior criminal convictions.  TT 287-359. Counsel also elicited testimony from the informant in which he admitted that he possessed stolen Christmas toys.  TT 291-92.  Moreover, during cross-examination counsel in fact touched upon several of the topics at issue.  For instance, counsel asked the informant numerous questions regarding the informant's arrest for a crime involving a check belonging to the informant's father. TT 294-96.  Counsel also asked the informant numerous questions regarding the alleged unpaid debt, and argued during his summation that the debt gave the informant a motive to "set up" the Petitioner because the informant did not want to repay Petitioner.  TT 301-307, 342-45, 483-84.

Second, Petitioner has failed to demonstrate that the outcome of the trial would have been different if his counsel had pursued the specific lines of questioning at issue.  Quite simply, the evidence of Petitioner's guilt was very strong.  For these reasons, the petition on these grounds should be denied.

### 11.   Alleged Failure to Move for a Mistrial in Light of a Remark Made by the Prosecutor During His Summation

Petitioner argues that defense counsel was ineffective for failing to move for a mistrial when the prosecutor pointed at Petitioner and called him a "gutter dweller" during his summation.  Dkt. No. 1 at 35.  Respondent points out that the prosecutor used this phrase to describe his own witness,

the informant.  Dkt. No. 6 at 18.  Respondent also points out that counsel objected to the use of the

phrase to describe Petitioner, and that the objection was sustained.  *Id.*

The pertinent portion of the prosecutor's summation is as follows:

| | |
|---|---|
| Prosecutor: | Now, August 5th, 2004.  I apologize, once again, Ladies and Gentlemen.  We kind of took you down into the gutter for this case.  But that's where these things happen.  These things happen in the gutter.  That's where drug dealers live.  That's where they operate.  That's their world.  So we had to bring a gutter dweller in here, [the informant].  No two ways about it.  Nobody in this room would have anything to do with [the informant], because of the kind of person he is, except for one person, and that person is right there, the Defendant.  Unfortunately, that's what we have to do in this business; in order to get somebody in the gutter, you've got to use somebody in the gutter. |
| Defense Counsel: | Objection, Your Honor. |
| The Court: | Sustained as to gutter.  Stricken. |

TT 503-04.

A close reading of the transcript reveals that *the prosecutor referred to his own witness, the*

*informant, as a gutter dweller*.  TT 503-04.  The prosecutor did not specifically call Petitioner a

"gutter dweller," rather he stated that Petitioner was "in the gutter."  *Id.*  In any event, counsel

objected, and the Court sustained the objection, and struck the word "gutter."  *Id.*  Counsel had no

reason to then move for a mistrial.  Accordingly, Petitioner has failed to meet either prong of the

*Strickland* standard.  Thus, the petition on this ground should be denied.

### 12.     Alleged Failure to Object to Vouching of Informant's Credibility

Petitioner claims that counsel was ineffective by failing to object to the People's vouching of

the informant's credibility.  Dkt. No. 1 at 34.  In Petitioner's brief on direct appeal, appellate

counsel pointed to the following comments made by the prosecutor during his summation:

> In order to buy drugs from a drug dealer, you've got to use somebody who the drug dealer will deal with. . . . *We* got to get somebody that the drug dealer trusts. Somebody he'll deal with.  And that's why, as I told you, *we* kept [the informant] on that very, very short leash.
> . . . .
> [T]here was [Investigator] Al David, who had [the informant] in visual contact the whole way.  So *we* never ever lost sight of this guy.  The reason for that is because *we* have to keep as close control over the situation as possible.  *We* can't let a guy like [the informant] have any freedom in this operation.

TT 504, 507-08 (emphasis added).

Thus, it appears that Petitioner is arguing, as he did on direct appeal through appellate counsel, that the prosecutor's use of the word "we" during his summation bolstered the informant's credibility. Ex. A at 5, Ex. B at 34.  Respondent argues that this claim is belied by the record itself.  Dkt. No. 6 at 17-18.  The Court agrees.

There is no indication that the prosecutor was attempting to vouch for the informant's credibility.  Rather, the remarks suggest that the informant was being controlled and directed by the police, *i.e.*, he was "on a leash," and needed to be kept in sight and under control.  Moreover, the prosecutor himself conceded that the informant had used drugs, was facing pending criminal charges, and had been in prison.  TT 499-501.  The prosecutor even described the informant as a "gutter dweller."  TT 504.

Accordingly, Petitioner has failed to meet either prong of the *Strickland* standard, and the petition on this ground should be denied.

**D.      Alleged Perjury**

**1.      Detective Cole**

Petitioner argues that Detective Cole committed perjury when he testified that he did not participate in the seizure of Petitioner's truck.  Dkt. No. 1 at 37-39.  Respondent argues that this claim should be denied because the testimony was not false.  Dkt. No. 6 at 20-21.  Respondent also argues that the testimony was immaterial and unlikely to have changed the jury's verdict.  *Id.*

On direct appeal, Petitioner, through appellate counsel, argued that Detective Cole "may have told an untruth when testifying."  Ex. A at 11.  Appellate counsel pointed out that on cross-examination, defense counsel asked Detective Cole if he had "any participation in the seizure of Mr. Crandall's vehicle."  TT 390.  Detective Cole responded, "No, sir."  TT 390.  Appellate counsel contrasted this testimony with a towing report/receipt that indicates that Petitioner's truck was towed from the town of Perth, New York, to the Amsterdam Police Department.  *Id.* at Ex. A at p. AA-21.  Detective Cole's signature appears on the line marked "Receipt of Vehicle."  *Id.*

The Appellate Division rejected this claim as "unpersuasive."  *Crandall*, 38 A.D.3d at 998.  The Court explained, "An Amsterdam detective who signed for the *receipt* of defendant's truck from the towing company testified on cross-examination that he did not participate in the *seizure* of the truck."  *Id.* at 998 n.1 (emphasis in original).  This determination was not contrary to, or did not involve an unreasonable application of, clearly established Supreme Court law.

The Second Circuit has held that "a showing of perjury at trial does not in itself establish a violation of due process warranting habeas relief."  *Ortega v. Duncan*, 333 F.3d 102, 108 (2d Cir. 2003) (citing *Sanders v. Sullivan*, 863 F.2d 218, 225 (2d Cir. 1988)).  Rather, "when false testimony is provided by a government witness without the prosecution's knowledge, due process is violated only if the testimony was material and the court is left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted."  *Ortega*, 333 F.3d at 108

22

(citations and quotation marks omitted).

Petitioner has failed to show that Detective Cole's testimony was false. The towing receipt simply shows that Detective Cole signed for the receipt of Petitioner's truck. Accordingly, this claim is unavailing and should be denied.

### 2.    Detective DiCaprio

Petitioner argues that Detective DiCaprio testified falsely on cross-examination "when he stated that Petitioner's truck 'ended up at the Amsterdam Police Station **after** Petitioner's arrest.' " Dkt. No. 1 at 37 (emphasis in petition). Petitioner claims that an "undisclosed report' indicates that the vehicle was turned over for forfeiture **before** Petitioner's arrest. *Id.* Respondent argues that Petitioner has mischaracterized this witness's testimony.[9] Dkt. No. 6 at 21-22.

During cross-examination, the following exchange took place:

Defense counsel:    Mr. Crandall's vehicle was seized after August 5th, 2004; were you involved with the seizure of his vehicle?

Detective DiCaprio:    His vehicle ended up at the Police Station after his arrest. That I - - That is for sure.

Defense counsel:    Were you present when his vehicle was seized?

Detective DiCaprio:    No.

Defense counsel:    Do you know who was there?

Detective DiCaprio:    No, I don't.

---

[9] Respondent also argues that this claim is unexhausted and procedurally defaulted because Petitioner failed to raise this claim on direct appeal. Dkt. No. 6 at 6-10, 21-22. However, in Petitioner's *pro se* supplemental brief filed on direct appeal, Petitioner argued that this witness "deceptively testified" about his involvement with the seizure of the truck. Ex. B at 11. Therefore, construing Petitioner's claims broadly, Petitioner arguably raised this claim on direct appeal and thus has exhausted this claim.

Defense counsel:   Was it someone from the drug investigation unit or Detective unit of the Amsterdam Police Station?

Detective DiCaprio:   I wasn't there.  That's all I can say.

TT 381.

The Appellate Division found that Petitioner's claim of police perjury was "unpersuasive." *Crandall*, 38 A.D.3d at 997.  This determination was not contrary to, or did not involve an unreasonable application of, clearly established Supreme Court law.

First, the Court finds that *when* Petitioner's vehicle was seized by the police is irrelevant to deciding the constitutionality of Petitioner's conviction.  The cell phone was the only alleged item from the vehicle that Petitioner even tried to explain was exculpatory.  However, the Court determined that the cell phone was *not* exculpatory.  Therefore, when the vehicle was seized is irrelevant.

Second, even if Petitioner's vehicle was "turned over" for forfeiture before his arrest, as Petitioner vaguely claims, this does not necessarily disprove Detective DiCaprio's testimony that the vehicle ended up at the police station after his arrest.  The vehicle could have been at a location other than the police station before Petitioner's arrest.  Moreover, Detective DiCaprio stated that he was not present when the vehicle was seized and did not know who was present when the vehicle was seized.  Thus, Petitioner's claim is unavailing.  Accordingly, the claim should be denied.

**3.     The Informant**

Petitioner also appears to argue that the informant committed perjury "when he testified that he was unsure whether or not he had a license, but that his vehicle was registered at the time." Dkt. No. 1 at 39-40.  Petitioner claims, without support, that the informant pled guilty to driving without

24

a license "months before trial," and that his registration was suspended.  *Id.*  Respondent argues that

this claim is unexhausted and procedurally defaulted because Petitioner failed to raise this claim on

direct appeal, and, in any event, is meritless.  Dkt. No. 6 at 22-23.

An application for a writ of habeas corpus may not be granted until a petitioner has

exhausted all remedies available in state court unless there is an "absence of available State

corrective process" or "circumstances exist that render such process ineffective to protect the rights

of the applicant."  28 U.S.C. § 2254(b).  To satisfy the exhaustion requirement, a petitioner must do

so both procedurally and substantively.  Procedural exhaustion requires that a petitioner raise all

claims in state court prior to raising them in a habeas corpus petition.  Substantive exhaustion

requires that a petitioner "fairly present" any constitutional claims to the highest state court in the

same factual and legal context in which it appears in the habeas petition.  *Baldwin v. Reese*, 541

U.S. 27, 29 (2004); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054

(1995); *Fama v. Commissioner of Cor. Servs.*, 235 F.3d 804, 808 (2d Cir. 2000); *Dorsey v. Kelly*,

112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)); *Daye v. Atty.*

*Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982).  The requirement that the state courts have

been given a reasonable opportunity to pass on the federal habeas claim is satisfied if the legal basis

of the claim made in state court was the "substantial equivalent" of that of the habeas claim.

*Picard*, 404 U.S. at 278; *Daye*, 696 F.2d at 189-90.  Finally, the petitioner must have used the

proper procedural vehicle so that the state court may pass on the merits of petitioner's claims.  *Dean*

*v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985); *Barton v. Fillion*, No. 03-CV-1377, 2007 WL 3008167,

at *5 (N.D.N.Y. Oct. 10, 2007)(Hurd, J., adopting Report-Rec. of DiBianco, M.J.).  A claim is

deemed exhausted when no real avenue remains by which it could be raised.  *See Bossett*, 41 F.3d at

828.

After a review of Petitioner's submissions on direct appeal (both the counseled brief and the *pro se* supplemental brief), it appears that Petitioner did not raise this claim on direct appeal. Thus, the claim was not decided on the merits by any state court and this claim is, therefore, unexhausted. Moreover, there is no remaining avenue by which Petitioner could exhaust the perjury claim. He cannot now file a direct appeal in order to advance his perjury claim because a defendant is "entitled to one (and only one) appeal to the Appellate Division." *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001).

To the extent that the facts supporting Petitioner's claim concerning the informant's license and vehicle registration were apparent on the trial record, "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." *Aparicio*, 269 F.3d at 91 (citing CPL § 440.10(2)(c)).[10] Moreover, any section 440 motion filed by Petitioner would also be met by CPL §440.10(3)(c), which provides that a court may deny a motion if the defendant filed a previous motion to vacate his conviction and was in a position to raise the claim but did not. *See Murden v. Artuz*, 497 F.3d 178, 192-94 (2d Cir. 2007)(holding that CPL § 440.10(3)(c) was an adequate state ground to serve as a procedural bar to federal habeas review of the merits of an ineffective assistance of counsel claim), *cert. denied* 552 U.S. 1150

---

[10]   *See Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008)(holding that "even if no state court had applied section 440.10(2)(c) to Clark's claim, the district court itself should have done so in the first instance pursuant to the exhaustion requirement for federal habeas.")(citing *Sweet v. Bennett*, 353 F.3d 135, 140-41 (2d Cir. 2003)(applying section 440.10(2)(c) to claims raised for the first time in federal habeas petition), *cert. denied* 129 S. Ct. 130 (2008); *Cruz v. Berbary*, 456 F. Supp. 2d 410, 414-15 (W.D.N.Y. 2006) (finding petitioner's claim of ineffective assistance of counsel unexhausted and procedurally defaulted, applying Section 440.10(2)(c) because petitioner had no justifiable reason, "especially since he had different counsel representing him," for not raising an ineffective assistance claim on direct appeal).

(2008).  Accordingly, Petitioner's perjury claim would be deemed exhausted but procedurally barred.

This Court could review the procedurally defaulted claim only if Petitioner demonstrated either (1) good cause for the default and actual resulting prejudice; or (2) that the denial of habeas relief would leave unremedied a "fundamental miscarriage of justice," *i.e.*, that he is actually innocent.  *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Coleman v. Thompson*, 501 U.S. 722, 748-750 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Fama*, 235 F.3d at 809.  Here, Petitioner has failed to establish cause for the default or that a fundamental miscarriage of justice will result from no federal review of the claim.

However, to the extent that the alleged facts supporting the Petitioner's claim appeared outside of the record, I will assume *arguendo* that the claim is unexhausted and could be raised in a motion pursuant to N.Y. C.P.L. §440.  *See Ledesma v. Cunningham*, No. 03 Civ. 6322,  2003 WL 22047147, at *2 (S.D.N.Y. Sept. 2, 2003) (finding that a claim was unexhausted where the claim encompassed matters outside the record, the Appellate Division was not able to rule fully on the merits of the claim, and therefore a § 440 motion was still available to the petitioner).  Accordingly, I elect to exercise my discretion to review it.

The pertinent testimony is as follows:

Q:    Do you have a valid driver's license?
A:    Yes, I do.
Q:    Did you have a valid driver's license in August of 2004?
A:    August 2004.  I don't know.
Q:    Well, on August 5th, 2004, when you drove to the Mobil Mini-Mart, did you
        have a driver's license then?
A:    I don't think so.
Q:    What car did you drive?
A:    Um, I am not even sure what car I was driving.  I think my black Grand Prix.

> Q:    Did you own that car?
> A:    Yeah.
> Q:    Was it registered to you?
> A:    Yeah.
> Q:    Do you know what the plate number was on the car?
> A:    No.

TT 348-49.

Even if the informant pled guilty to driving without a license before trial, and his registration was suspended, as Petitioner argues, this information would not establish that the informant testified falsely.  The informant stated that he was unsure whether his license was valid during August of 2004.  TT 348-49.  He also stated that he was unsure of the vehicle he drove.  *Id.*  He thought that he drove his black Grand Prix, which he stated "was" registered to him.  *Id.*  He was not asked if the registration was suspended.  Thus, Petitioner has failed to establish that this testimony was false.  Accordingly, the claim is unavailing and should be denied.

**WHEREFORE**, based upon the foregoing, it is hereby

**RECOMMENDED**, that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED**.  Furthermore, I find that Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right.");  *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000), *cert. denied*, 209 F.3d 107.  Therefore, I recommend that no certificate of appealability issue with respect to any of Petitioner's claims; and it is further

**ORDERED**, that the that the Clerk serve copies of the electronically-available-only

opinions[11] cited herein on Petitioner.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE

APPELLATE REVIEW.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: June 1, 2010
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

[11] Those decisions include *Moss v. Phillips*, No. 9:03-CV-1496, 2008 WL 2080553 (N.D.N.Y. May 15, 2008), *Sturdivant v. Barkley*, No. 04-CV-5659, 2007 WL 2126093 (E.D.N.Y. July 24, 2007), *Barton v. Fillion*, No. 03-CV-1377, 2007 WL 3008167 (N.D.N.Y. Oct. 10, 2007), *Ledesma v. Cunningham*, No. 03 Civ. 6322,  2003 WL 22047147 (S.D.N.Y. Sept. 2, 2003)